UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GMB GLOBAL MARITIME BREAKBULK,

        Plaintiff,

- against -

KUEHNE & NAGEL S.A., MADRID,

        Defendant.
------------------------------------------------------------X



08 CV 2031

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, GMB GLOBAL MARITIME BREAKBULK ("Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, KUHNE & NAGEL S.A., MADRID (hereinafter referred to as "Defendant") alleges, upon information and belief, as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law.

    3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law.

    4.     By a GENCON charter party and rider (the "charter party") entered into dated January 11, 2008, Plaintiff chartered to Defendant the M/V SAGA VIKING (the "Vessel") for a

carriage of 1,250 packages ductile pipes DN containing one nested pipe of DN 1,400 unit weight from Qingdao, China to Cartagena. *See GENCON charter party attached as Exhibit 1.*

5. The Vessel was to carry deck cargo lashed to master's satisfaction and the Defendant experienced numerous problems in this respect, as it had to, *inter alia*, order and weld new lashing rings onto the deck, delays ensued and the Defendant incurred demurrage. Freight was earned upon completion of loading of the cargo.

6. The charter party provides for demurrage rate of $47,500.00 per day.

7. Despite due demand by Plaintiff, Defendant has breached the charter party by failing to pay outstanding freight and demurrage that is owed to Plaintiff in the principal amount of $3,406,141.53.

8. Pursuant to the charter party, all disputes are to be submitted to arbitration in London with English Law to apply.

9. Plaintiff will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

10. This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

11. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

A. Principal claim:

Seafreight

15.268,711 KGS @ 200,00 PMT FIOS L/S/D                $3,053,742.20

|   | Balance due and owing on demurrage overdue | $352,399.33 |
|---|---|---|
| B. | Interest on principal claim at 7% compounded quarterly for two years: | $507,112.75 |
| C. | Attorneys' fees and costs of arbitration: | $220,000.00 |
| **Total:** | | **$4,133,254.28** |

12. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

13. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C. That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$4,133,254.28** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.   That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E.   That in the alternative, this Court enter judgment against the Defendant on the claims set forth herein;

F.   That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G.   That this Court award Plaintiff its attorney's fees and costs of this action; and

H.   That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: February 29, 2008
       Southport, CT

The Plaintiff,
GMB GLOBAL MARITIME BREAKBULK


By: /s/ Anne C. LeVasseur
Patrick F. Lennon
Anne C. LeVasseur
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
pfl@lenmur.com
acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss.:    New York City
County of New York   )

1. My name is Patrick F. Lennon.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: February 29, 2008
       Southport, CT

*Anne C. LeVasseur*
Anne C. LeVasseur

Exhibit 1



| 1. Shipbroker<br>COLI SCHIFFAHRT & TRANSPORT GMBH & CO KG<br>GROSSER GRASBROOK 10<br>20457 HAMBURG | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODENAME:"GENCON" Part I |
|---|---|
|  | 2. Place and date<br>HAMBURG, JAN 11th 2008 |
| 3. Owners / Place of business (Cl. 1)<br>GMB SCHIFFAHRTS GMBH<br>NIEDERKASSELER STRASSE 100<br>40547 DÜSSELDORF | 4. Charterers / Place of business (Cl. 1)<br>KUEHNE + NAGEL S.A.<br>TAJO 8, POLIGONO INDUSTRIAL LAS ACACIAS<br>ES-28840 MEJORADA DEL CAMPO (MADRID), SPAIN |
| 5. Vessel's name (Cl. 1)<br>SAGA VIKING | 6. GT/ NT (Cl. 1)<br>SEE RIDER CLAUSE 20 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>SEE RIDER CLAUSE 20 | 8. Present position (Cl. 1)<br>KUSHIRO JAN 11 / TOMAKOMAI JAN 12-13 /<br>NIGATA JAN 14-15 / SAKAIMINATO JAN 16-17<br>THEREAFTER QINGDAO AGW/WOG |
| 9. Expected ready to load (abt.) (Cl. 1)<br>JAN 18/20 2008 | |
| 10. Loading port or place (Cl. 1)<br>QINGDAO, P.R. CHINA 1SPSB AAAA<br>MERCHANT'S BERTH, MAX DRAFT 10 METERS | 11. Discharging port or place (Cl. 1)<br>CARTAGENA/VALENCIA/ALICANTE IN<br>MERCHANT'S OPTION, MERCHANT'S BERTH<br>1 SPSB AAAA |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed: if full and completed cargo not agreed state " part cargo" (Cl. 1)<br>1.250 PACKAGES DUCTILE PIPES DN 1600 CONTAINING ONE NESTED PIPE OF DN 1400 UNIT WEIGHT:<br>EACH PACKAGE OF DN 1600 INCLUDING DN 1400 NESTED PIPE ABT 12,5 TS = TOTAL ABT 15.625 MTS<br>SIZE: LENGTH 8,27 METERS, O.D. ONE END 1,82 M AND OTHER END 1,67 M | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl.4)<br>USD 200,- PMT FIOS (L/S/D) | 14. Freight payment (state currency and method of payment: also beneficiary and bank account) (Cl. 4)<br>FREIGHT PREPAID |
| 15. State if Vessel's cargo gear shall not be used (Cl. 5)<br>TO BE USED | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | a) Laytime for loading<br>SEE RIDER CLAUSE 21 |
| 18. Agents (loading) (Cl. 6)<br>CARRIERS AGENT | b) Laytime for discharging<br>SEE RIDER CLAUSE 22 |
| 19. Agents (discharging) (Cl. 6)<br>CARRIERS AGENT | c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>USD 47.500 PDPR, HALF DESPATCH WTS. SEE RIDER CLAUSE 21 AND 22 | 21. Cancelling date (Cl. 9)<br>25th JAN 2008 |
| | 22. General Average to be adjusted at (Cl. 12)<br>LONDON |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15)<br>NONE,<br>IF ADD CARGO WILL BE BOOKED 5% COMM TO APPLY ON TOTAL FREIGHT |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply (Cl. 19) | |
| (a) State maximum amount for small claim/shortened arbitration (Cl. 19)<br>USD 50.000,- | 26. Additional clauses covering special provisions, if agreed.<br>SEE RIDER CLAUSES 20-35 |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
|  |  |

This Charter Party is a computer and precise generated copy of the original GENCON (as revised 1922, 1976 and 1994) form, which can be modified, amended or added to only by the striking out of original characters or the insertion of new characters, such characters being clearly highlighted by underlining, use of colour or use of larger font and marked as having been made by the license of end user as appropriate and not by the author.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

This Charter Party is a computer and precise generated copy of the original GENCON (as revised 1922, 1976 and 1994) form, which can be modified, amended or added to only by the striking out of original characters or the insertion of new characters, such characters being clearly highlighted by underlining, use of colour or use of larger font and marked as having been made by the licence of end user as appropriate and not by the author.

**RIDER TO GENCON CHARTER PARTY**
**dated Hamburg, 11th January 2008**

Clause 20:   Performing Vessel

Vessel:                          MV "SAGA VIKING"

Details:                         All details about as described
Type:                            box shaped
Built:                           2002, Flag Hong Kong
DWT / Draft:                     46882 MT (summer) at 11.823 meters
Length overall:                  199,20 meters
Beam / Width:                    30,50 meters
Depth:                           16,40 meters
GRT/NRT:                         29,867 MT / 14,529 MT
Holds / Hatches:                 10 / 10
Cranes:                          2 x Gantry cranes / 42 ts
Class:                           DNV

**Bottom Tanktop Dimensions :**
- Hold No. 1                     13,20 m x 12,314 m (1 step on sides)
- Hold No. 2                     13,20 m x 22,80 m
- Hold No. 3 - 9                 13,20 m x 25,30 m
- Hold No. 10                    13,20 m x 14,778 (2 steps on sides)

**Hold opening :**
- No. 1                          13,20 X 17,82 m
- No. 2                          13,20 X 22,80 m
- No. 3 - 10                     13,20 X 25,30 m

**Hatch cover strength :**

Hatch No 1 + 2                   2,42 ts / sqm
Hatch No 3 – 10                  3,00 ts / sqm

**Tanktop strength :**

Hold No 1                        28,4 ts / sqm
Hold No 2                        18,3 ts / sqm
Hold No 3 – 9                    19,5 ts / sqm
Hold No 10                       19,0 ts / sqm

Clause 21:   Loading at Quingdao Port

Loading shall be at Charterers' nominated berth, always accessible and always afloat.

The cargo shall be delivered FIOS Quingdao port, with stevedoring, lashing, securing and dunnage (L/S/D) at Charterers' expense, to masters satisfaction.

The laytime to commence at 1 pm if Notice of Readiness is given at or before noon and at 8 am next working day if Notice of Readiness is given during office hours after noon. In the

event of Charterers' berth being occupied or otherwise unavailable, NOR may be tendered whether in berth or not, whether in port or not provided the vessel is within the port limit area or customary anchorage, whether in free pratique or not, whether customs cleared or not, unless sooner commenced and, if sooner commenced, time actually used to count as laytime. After commencement of laytime, all time lost in waiting for berth to count as laytime. Time used for shifting from waiting anchorage to berth not to count as laytime. Office hours to be from 9 am to noon on Saturday.

First opening and last closing of hatches to be for Owners' account and time used not to count as laytime, but any other intermediate opening and closing of hatches to be for Charterers' account and time used to count as laytime.

Charterers are responsible for nesting the DN 1600 / DN 1400 pipes at their risk and expense.

Charterers warrant that nested pipes a/o nesting system are suitable for ocean transport and are properly secured and fixed into each other against any movement / rolling during handling and ocean transportation.

The cargo to be loaded by Charterers, free of risk and expenses to the Owners with a quantity of 4.000 metric tons per weather working day, Saturdays, Sundays and public holidays included (shinc).

Tally on dock's side to be Charterers' account and tallying on ship's side to be for Owners' account. Owners only responsible for numbers of pipes loaded on board the vessel.

All dunnage and materials for loading, lashing, and securing of pipes at loading port to be for Merchant's account.
Pipes to be stowed under deck or on deck as per stowage plan under supervision of master of the vessel.

The stowage of 6 layers (tiers) pipes under deck shall be acceptable.

Overtime expenses at loading port to be borne by the party ordering the same. If overtime ordered by port authorities, cost of same to be borne by the Charterers. However, officer's and crew's overtime to be always for Owners' account.

Cargo shipped on deck is at Charterers' risk and expense.

**Clause 22:   Discharging Port**

The cargo shall be discharged by Merchant, free of risk and expenses to the Carriers with a quantity of 3.000 metric tons per weather working day, Saturdays, Sundays and public holidays (shinc) included.

The laytime to commence at 1 pm if Notice of Readiness is given at or before noon and at 8 am next working day if Notice of Readiness is given during office hours after noon. In the event of Charterers' berth being occupied or otherwise unavailable, NOR may be tendered whether in berth or not, whether in port or not provided the vessel is within the port limit area or customary anchorage, whether in free pratique or not, whether customs cleared or not, unless sooner commenced and, if sooner commenced, time actually used to count as laytime. After commencement of laytime, all time lost in waiting for berth to count as laytime. Time used for shifting from waiting anchorage to berth not to count as laytime. Office hours to be from 9 am to noon on Saturday.

First opening and last closing of hatches to be for Owners' account and time used not to count as laytime, but any other intermediate opening and closing of hatches to be for Charterers' account and time used to count as laytime.

Dunnage removal to be for Charterers' account.

**Clause 23:   Supervision**

Loading/discharging always to be under supervision of Master.

**Clause 24:   Port Charges at loading and discharging port**

Port charges and or wharfage for the goods for supplier's and / or receiver's and / or Charterers' account and port charges for vessel Owners' account.

**Clause 25:   Port Agents**

Owners agent at loading and discharging port.

**Clause 26:   Stevedore Damage**

All claims for damages to any part of the vessel allegedly caused by stevedores at either loading or discharging ports are to be settled directly between Owners and stevedores, but if same cannot be settled by both parties, Charterers to co-operate fully for immediate settlement of the said damage. Master to notify Charterers of damages, if any, in writing as soon as practical but latest within 24 hours of its occurrence or in the case of hidden damage, after its discovery. Otherwise Charterers are not to be liable.

**Clause 27:   Payment of Freight**

Freight to be paid in full in U.S. Dollars to the Owners' designated bank before releasing bills of lading and shall be deemed earned and be non-returnable on loading, vessel and / or cargo lost or not lost.

Owners designated bank details are ;

To follow

**Clause 28:   Cancellation**

After signature of this GENCON CHARTER and carrier's nomination of the vessel this Charter Party can only be cancelled by the Charterer against compensation of all expenses occurred to the carrier.

The rights of the Charterers for cancellation due to non-performance of the Owners remain in force.

Vessel to be considered as nominated and gcn c/p to be considered as signed upon clean fixture.

**Clause 29:    B(s)/L Quantity**

Bill(s) of Lading quantity to be determined according to Mill's weight and measure certificate. In case of weights being disputed by Master, an independent surveyor is to be appointed with costs to be borne by partie who's incorrect. If findings of surveyor are in between Master's and Charterers figures costs being shared 50/50 between both parties. Surveyor's findings to be applied.

**Clause 30:    Notices**

Owners shall give every 6 days notices of vessel's position to Charterers and their Nominees after nomination of the performing vessel.

Owners to give 5 / 3 days preliminary notices and 2 / 1 days final notice of arrival date at loading and discharging ports to Charterers and their nominees.

At the time of arriving to Quingdao port, the Charterers or their Nominee will notify the Owner of the nominated berth. Then, the vessel must proceed to that berth and tender notice of readiness upon arrival there. If no such berth available the vessel must proceed to a position within or off the port where ships usually lie and tender notice of readiness.

Charterers to give minimum 10 days notice of discharging port.

Owners to give 7 / 5 / 3 days preliminary notices and 2 / 1 days final notice of arrival date at discharging ports to Charterers and their nominees.

**Clause 31:    P+I Coverage**

Owners shall guarantee that the vessel has full P+I coverage throughout the voyage.

**Clause 32:    ISPS**

BIMCO's ISPS Clause for voyage charter parties to apply.

**Clause 33:    War Risk**

War risk as per "Voywar 2004" to apply and current premium is included in the freight rates.

**Clause 34:    Other Cargo**

The cargo may be carried as full or part cargo in carrier's option.

Carrier's option to deviate from the direct geographical route also for the purpose of loading and / or discharging other part cargo, as well as to bunker.

**Clause 35:    Terms and Conditions**

The terms of this Charter Party and Owners' bill of lading shall apply. In case of any contradiction between the Owners' bill of lading terms, the standard GENCON terms and conditions and this rider, then the terms of this rider shall supersede the terms of the bill of lading and the standard GENCON terms.

**END OF ADDITIONAL CLAUSES**